VETHAN LAW FIRM, P.C.
Charles M.R. Vethan
California Bar No. 300098
Email: cvethan@vethanlaw.com
7755 Center Ave. 11th Floor
Huntington Beach, CA 92647
Telephone: (713) 526-2222
Facsimile: (713) 526-2230
Service email: edocs@vwtexlaw.com

**Attorney for Plaintiff**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **8 Lane Investment, Inc. d/b/a VRX Labs,** | § § § | **Civil Action No. _____** |
| **Plaintiff,** | § § | **Plaintiff's Original Complaint** |
| **vs.** | § § | |
| **GenTech Scientific, Inc., John Doe I and John Doe II,** | § § § | |
| **Defendants** | § § | **JURY TRIAL DEMANDED** |

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, 8 Lane Investment, Inc. d/b/a VRX Labs ("VRX Labs"), by and through its undersigned counsel, files this *Plaintiff's Original Complaint* against Defendants GenTech Scientific, Inc. ("GenTech"), John Doe I, and John Doe II, and would show as follows:

//

## I.    NATURE OF ACTION

1.    This is an action brought by Plaintiff, 8 Lane Investments, Inc. d/b/a VRX Labs, to recover against Defendant, GenTech Scientific, Inc., for making materially false statements regarding sensitive scientific testing equipment, or medical grade instruments, which GenTech represented could be utilized at a Cannabis testing laboratory in Long Beach, California. Upon receipt, the laboratory testing instruments were not as represented. As a result of GenTech's decision to ship the highly sensitive equipment / laboratory testing instruments via railroad car, VRX Labs received damaged equipment / laboratory testing instruments, requiring it to expend a considerable amount of money in an attempt to repair the damaged units.   Meanwhile, VRX Labs had to continue maintaining payroll for its lab technicians, despite the lack of equipment / laboratory testing instruments needed to perform their work.  The poor quality of the equipment / laboratory testing instruments also required VRX Labs to engage in repeated preventative maintenance. Further, VRX Labs had to expend time and money to ensure that the damaged units would be sufficient for the method validation development and protocols required by the Bureau of Cannabis Control, now known as the Department of Cannabis Control.

## II.    JURISDICTION AND VENUE

2.    The Court has diversity jurisdiction over Defendants GenTech Scientific, Inc., John Doe I, and John Doe II under 28 U.S.C. § 1332. Plaintiff VRX Labs is a citizen of and domiciled in the state of California. Defendant GenTech Scientific, Inc. is a citizen of and domiciled in the state of New York. Upon information and belief, Defendants John Doe I and John Doe II are citizens of the state of New York. The injury sought in this matter exceeds the statutory amounts.

3.    This Court has personal jurisdiction over the Defendant, as Defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 8 (1984).

4.     In order to subject a non-resident defendant to personal jurisdiction, that defendant must have enough minimum contacts with the forum state that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

5.     "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

6.     If no federal statute authorizes jurisdiction, the district court applies the law of the state in which it sits. FED. R. CIV. P. 4(k)(1)(A); *CollegeSource Inc. v. Academic One*, 653 F.3d 1066 (9th Cir. 2011). California's long-arm statute permits jurisdiction coextensively with the Due Process Clause, authorizing jurisdiction wherever allowed by the state. CAL. CIV. PROC. CODE § 410.10; *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Upon the existence of  statutory authorization for an assertion of jurisdiction, courts analyze whether personal jurisdiction over a defendant comports with federal due process requirements by examining whether there is a basis to assert general or specific jurisdiction. *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1064 (S.D. Cal. 2019) (Anello, J.).

7.     "Where general jurisdiction is inappropriate, a court may still exercise specific jurisdiction if the defendant has sufficient contacts with the forum state in relation to the cause[s] of action." *Sher v. Johnson* (9th Cir. 1990) 911 F.2d 1357, 1361 (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, Inc., 557 F.2d 1280, 1286 (9th Cir. 1977)).

8.     To evaluate whether the Court should assert specific jurisdiction over Defendant, the Courts apply the Ninth Circuit's three-pronged test for determining whether a defendant has sufficient contacts with the forum state. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). This test examines whether the (1) defendant has *either* purposefully (a) directed

his activities towards the forum state or initiated a transaction with the forum state or one of its residents *or* (b) availed himself of the privileges and benefits of the forum state, permitting him to benefit from the protections of its laws; (2) cause of action arises out of the defendant's activities related to the forum state; and (3) assertion of jurisdiction is reasonable and comports with "fair play and substantial justice." *See id.*

9.   To determine whether the cause of action arises out of "forum-related activities," the Ninth Circuit considers whether the claim would have arisen "but for" the defendant's forum contacts. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

10.   Here, (1) Defendant purposefully directed its marketing activities to secure multiple purchase orders with the Plaintiffs, sold and shipped goods to Plaintiff in California,  and attempted to service and/or repair the goods in California; (2) the cause of action arises out of the Defendant's California-related activities  because, "but for" Defendant's actions, the Plaintiff would neither have a claim nor harm; and (3) the assertion of jurisdiction is reasonable and comports with "fair play and substantial justice."

11.   Therefore, this Court has personal jurisdiction over Defendants GenTech, John Doe I, and John Doe II.

12.   Venue in this judicial district is proper under 28 U.S.C. §1391(b)(2) and 18 U.S.C. § 1965(b).

## III.   PARTIES

13.   Plaintiff, 8 Lane Investment, Inc. d/b/a VRX Labs, is a corporation duly organized under the laws of the State of California. Its business address is 1811 / 1821 W. Anaheim, Long Beach, CA 90813 (a new module building was installed next to the existing building).

14.     Defendant, GenTech Scientific, Inc., is a corporation duly organized under the laws of the State of New York. Its business address is 23 Mill St., Arcade, NY 14009 and may be served at its business address, or wherever it may be found.

15.     Upon information and belief, Defendants John Doe I and John Doe II are persons or entities to which money or assets have been fraudulently transferred.

## IV.    FACTUAL BACKGROUND

16.     Plaintiff, VRX Labs, is a business that provides all Department of Cannabis Control ("DCC," formal California Bureau of Cannabis Control) phase I, II, and III testing services for Cannabinoids and Cannabinoid-related materials.

17.     Defendant, GenTech Scientific, Inc, is a leading company in research and laboratory equipment that sells and equips businesses, like VRX Labs, with new and refurbished sensitive scientific or medical-grade instruments, including equipment for Cannabis testing.

18.     After California legalized the sale of recreational marijuana starting on January 1, 2018, Plaintiff VRX Labs began searching for the equipment to provide highly regulated testing. That search led to discovering Defendant GenTech's website at https://gentechscientific.com in March of 2018.

19.     On its website, GenTech made multiple representations related to instruments and equipment they refurbish and sell, repair options, shipment, and warranties. VRX Labs reviewed the representations and was eager to purchase equipment from a reliable instrument provider.

20.     GenTech represented it had a long history of operation in the laboratory equipment industry. "GenTech Scientific was built on the foundation of reliable – yet affordable – instrument service and repair. Since 1996, the GenTech Team has been exceeding customers' expectations by providing service, repair, Preventative Maintenance (PM), and instrument qualification (OQ/PQ) for GC, MS, ICP and ICP/MS systems. Our skilled technicians also repair and service headspace for GC.

With the addition of a "Flying Test Probe" circuit board scanner, we have extended our service capabilities to include circuit board repair to the component level."

21.    The website published the following representations for availability and instrumentation, "[s]ince 1996, GenTech Scientific has been supplying quality refurbished analytical instrumentation. Our skilled technicians rigorously inspect and refurbish all of our products to go above and beyond a simple refurbishment process. We guarantee OEM standards at a fraction of the cost of new instruments, and we provide one year warranty on all GenTech Certified Instruments!... We have the instruments and the services to meet your labs customized needs!"

22.    GenTech also stated that "[w]e are a full service reseller of all major manufacturers for analytical instrumentation. We offer customized training, expert service, repair and professional installation." "GenTech is your comprehensive source for High Quality – Low Cost cannabis testing instruments, training and support."

23.    GenTech stated it conducted complete inspection of all electronics of its pre-owned and refurbished analytical instruments and accessories. For example, "[o]ur team of technicians, engineers and chemists will go through every system to ensure it meets the GenTech Certified Standards. Your refurbishment begins with a complete inspection of the internal components after removing all covers and checking everything from wiring to circuit boards, terminal connections, motors, plumbing and more – including a thorough cleaning."

24.    GenTech represented that its instruments perform full product calibration and data verification. "GenTech runs industry approved standards on your instrument to verify that the chromatography results are accurate within accepted specifications, and that these results are reliably reproducible. Any necessary adjustments will be made to the instrument until it meets specifications… GenTech Scientific provides customers with printed data to verify the quality measurements being identified."

25.     VRX Labs was particularly attracted to the representations of GenTech that it provides Cannabis Testing instruments. GenTech stated that it "has configured systems specifically to perform the tests most cannabis laboratories need to run." "Cannabis Testing Applications: Cannabinoid Characterization. Heavy Metals. Mycotoxins. Pesticide Residue. Residual Solvents. Terpenes. THC Potency."

26.     On packaging and shipment, GenTech represented that they have a "…long story of safely packaging instruments and equipment. We maintain strict guidelines when packing and shipping instruments to our customers."

27.     Also, GenTech represented it had White Glove Delivery Service. "Safe, fast, and clean delivery with GenTech's newly enhanced van. With weekly deliveries across US and Canada, GenTech offers a white glove guarantee, putting your equipment first!"

28.     Another statement on shipment included "professionally package and ship to your door" and that "[o]nce you order arrives in our Shipping Department, our professional shipping staff will perform a final quality control inspection. We know that we deal with sensitive instruments, so we package and protect your instrument to ensure its safe and undamaged arrival to your lab or business."

29.     On installation and training, the website made the representations of their professional laboratory setup that "[e]xpert service engineers ensure your lab is set up to your requirements." "Normal installation consists of unpacking, set up and basic performance verification of the equipment using well-known industry standards, as well as initial training for the operator. GenTech is also equipped to perform IQ/OQ and to meet manufacturer's specifications on selected instruments for an additional fee."

30.     GenTech's website stated the benefits of the GenTech installation. "Since GenTech service engineers refurbished your recently purchased equipment, they already know it and will have it online in very little time. A GenTech installation also protects your warranty; if we install the instrument, we know that it was done correctly and that any problems are not due to faulty installation."

31.    While GenTech admitted that their installation is not required for the warranty to be valid, they "ask that any buyer work closely with the GenTech staff to ensure a successful installation… With a GenTech installation, however, we guarantee that there will be few-if-any service issues throughout the warranty period."

32.    Additionally, GenTech offered the initial operator training. "A GenTech service engineer will provide training to familiarize your researchers with the instrument and its operations. If your lab is outside of our usual service area, GenTech will hire a top-notch service group in your area to provide installation and initial training. GenTech is also equipped to provide in-depth training on applications related to the instrument, either at your site or our own facility."

33.    Also, GenTech offered on-site service and repair stating to provide "[o]n demand service at your location." "GenTech provides excellent service to labs throughout the US, Canada, Mexico and the Caribbean."

34.    GenTech stated it provided a scientific warranty and that they "… stand behind our work." "Full Coverage Warranty: All Parts. All Travel. All Labor." "Our products are refurbished to the original manufacturers standards. All instruments come with a standard 1 year warranty with the purchase of installation. Or 90 days warranty without installation."

35.    GenTech represented it provided warranty repairs, "[e]very purchase receives Life-Time Phone support. Our fully trained technicians can assist you with any problems. Warranty repairs may be performed on-site or in-shop, depending on the nature of the problem."

36.    GenTech additionally stated that "[o]ur warranty policy is designed to keep your instrument in working order. GenTech will get you started in the right direction by correctly installing the instrument. The maintenance standards for the instrument will be outlined and all questions will be fully explained." "Life-Time Phone Support is standard with every purchase and is always available regardless of the warranty status."

37.     Lastly, GenTech stated on its website that "[w]e stand behind the work that we do and are committed to building trust and maintaining a high level of integrity."

38.     Additional representations included statements that the laboratory testing instruments was ideal for Cannabis industry, new at that time, and provide installation and four-day training to the lab technicians.

39.     VRX Labs was satisfied to find a reliable supplier of instruments and fully relied on representations published on GenTech's website to start negotiations with GenTech's representative.

40.     On or about March 13, 2018, GenTech's representative, Executive Business Development, Sales and Credit Manager, Mike Piccirillo ("Mr. Piccirillo"), emailed VRX Labs that GenTech had updated "our cannabis equipment lab testing quote to include Category I & II Pesticides, Residual Solvents and Terpenes analysis." *See* Exhibit 1. Prior representations of Mr. Piccirillo included that GenTech has refurbished sensitive scientific or medical grade instruments or testing equipment ("laboratory testing instruments") that operates like new, that it is an out of the box solution, that it is specially modified for the Cannabis testing industry that was new at that time, and that the laboratory testing instruments is reliable and sturdy. Those representations were made over the phone before the Plaintiff and Defendant entered into the agreements.

41.     Accordingly, VRX Labs and GenTech entered into several Purchase Order Agreements ("Purchased Orders") for the purchase of various cannabis laboratory testing instruments. GenTech subsequently invoiced the purchase to VRX Labs, which was the only portion of the agreement provided to VRX Labs.

42.     Besides issued invoices and Purchased Orders, VRX Labs never received any other documentation governing the sales of the laboratory testing instruments, including the terms and conditions of the purchase agreement.

## A. Original Purchase Order

43.    The first Purchase Order Agreement, (the "Original Purchase Order") was entered on March 20, 2018. On June 27, 2018, GenTech issued an invoice ("Invoice #21994") to VRX Labs for $283,748.22. *See* Exhibits 1 and 2.

44.    On April 12, 2018, VRX Labs issued a check of $45,000 to GenTech. On June 27, 2018, VRX Labs issued a check of $238,748.22 to GenTech. The full amount of Invoice #21994, $283,748.22, was paid by June 27, 2018.

## B. Second Purchase Order

45.    VRX Labs and GenTech entered into a second Purchase Order Agreement (the "Second Purchase Order") on May 5, 2018. After GenTech created the Second Purchase Order, a representative for VRX Labs made handwritten changes to make the county shipping as Los Angeles, California. *See* Exhibit 3.

46.    That handwritten note changed the standard boiler plate agreement to a specific agreement because, per UCC rules, handwritten notes prevail over those that are printed. In turn, the handwritten note changed the terms of the parties' agreement, replacing GenTech's standard terms and conditions with  the terms outlined in the four corners of the Second Purchase Order.

47.    GenTech did not circulate any additional terms and conditions to VRX Labs.

48.    GenTech issued an invoice ("Invoice #22202") to VRX Labs on August 6, 2018 (effective May 21, 2018). *See* Exhibit 4.

49.    On May 17, 2018, VRX Labs paid GenTech $100,000.00, pursuant to Invoice #22202. On August 13, 2018, VRX Labs paid GenTech $150,000.00, pursuant to Invoice #22202. On May 17, 2018, VRX Labs paid GenTech $140,733.72, pursuant to Invoice #22202.

50.    The full amount owed to GenTech, pursuant to Invoice #22202, was paid on August 28, 2018.

51.    Accordingly, as of August 28, 2018, VRX Labs had paid approximately $674,481.94 for the laboratory testing instruments. VRX Labs paid an additional $15,589.35 for other minor equipment.

### C. Failed Delivery of the Laboratory Testing Instruments and Lack of Technical Support

52.    By April 2019, the laboratory testing instruments had begun being delivered to VRX Labs in Long Beach, California. However, VRX Lab's consultant, Julie Taylor, was disallowed from scheduling a time to inspect the delivered laboratory testing instruments. Additionally, GenTech did not have the proper personnel available to allow in-person inspections.

53.    The inability to conduct an in-person inspection and examine the items prior to their delivery limited VRX Lab's ability to ensure that the items were appropriate and properly working. This inability was due entirely to GenTech and not VRX Labs, as GenTech refused to allow VRX Lab's consultant to conduct an in-person inspection.

54.    As a result, VRX Labs was initially unable to determine that many of the items, which were ultimately delivered to VRX Labs, were unfit for use. During the delivery process, which occurred via train/rail, multiple components of the laboratory testing instruments broke. Despite its own representations of proper shipment, GenTech failed to properly package the laboratory testing instruments with cushioning or resistance in order to mitigate damage to the expensive laboratory testing instruments.

55.    As a result of the ineffective/wrong laboratory testing instruments and the negligent shipping, VRX Labs was forced to incur additional expenses in maintaining payroll while new laboratory testing instruments were re-delivered and remediation and upkeep expenses to keep the lab running.

56.    Additionally, GenTech also failed to deliver various laboratory testing instruments ordered by VRX Labs, totaling to a value of approximately $241,676.00.

57.    One of the representations that GenTech made to VRX Labs was a technical support and warranty for the laboratory testing instruments. GenTech verified VRX Labs that it had local technicians who are capable and willing to come onsite at VRX Labs and calibrate the laboratory testing instruments, help set them up, and provide ongoing maintenance, as well as four-day training to verify that lab technicians properly operate the laboratory testing instruments. None of these promises materialized.

58.    The technicians that GenTech promised to send failed to come, were not trained or did not carry the necessary tools to fix the laboratory testing instruments. Instead, VRX Labs had to hire local third-party contractors to fix the laboratory testing instruments and provide necessary maintenance, all for extra fees.

59.    The Cannabis testing industry was new at the time, and VRX Labs had to develop its laboratory testing methods, also known as method validation ("method validation"), to satisfy the DCC's regulatory requirements.

60.    The delay in installing and calibrating the laboratory testing instruments caused additional delay in developing method validation. VRX Labs had to develop the method validation and submit it to the DCC for approval. The method validation had to satisfy quality assurance, quality control, and quality-control samples. For the new industry, it meant to develop a method that provides reliable and replicable sampling.

61.    Yet the delay in installation resulted in delay in developing the method validation, highly complex scientific process, prerequisite to satisfy necessary permit and certification requirements to operate Cannabis laboratory in California. Calibration of the laboratory testing instruments was off, and it took time and additional resources of VRX Labs to discovery the problem that was not visible nor easily discoverable.

62.    That delay further caused lost profits to VRX Labs.

# V.    CAUSES OF ACTION
## COUNT ONE
### Breach of Contract

63.    Plaintiff incorporates Paragraphs 1-62 by reference as though fully set forth herein.

64.    A complaint for breach of contract must include the following: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff therefrom.

65.    Multiple contracts existed between the Plaintiff and Defendant in the form of the Purchase Order Agreements. These contracts not only required delivery of the goods but also required proper care and shipping of the delivered goods.

66.    Upon providing the full monetary amount to Defendant, Plaintiff performed its obligations under the contract.

67.    However, Defendant breached the contract when Defendant failed to provide the requisite goods and/or failed to provide the requisite goods in proper condition and failed to deliver all the laboratory testing instruments Plaintiff paid for.

68.    Accordingly, Plaintiff suffered damages by paying the purchase price without receiving the right value in return.

## COUNT TWO
### California Commercial Code – Breach of Express Warranty

69.    Plaintiff incorporates Paragraphs 1-62 by reference as though fully set forth herein.

70.    In the alternative, Plaintiff pleads a breach of express warranty claim against Defendant.

71.    To prevail on a breach of express warranty claim under the California Uniform Commercial Code, the plaintiff must prove the following: (1) the seller's

statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.

72. The contract contains an express warranty if it contains "a description of the goods which is made part of the basis of the bargain [between the buyer and seller]." CAL. COM. CODE §2313(1)(b).

73. Here, Defendant represented to Plaintiff that the refurbished laboratory testing instruments operates like new, that it is an out of the box solution, that it is specially modified for the Cannabis testing industry that was new at that time, and that the laboratory testing instruments is reliable and sturdy.

74. These statements became part of the basis of the bargain between the Plaintiff and Defendant.

75. The warranty was breached, as the laboratory testing instruments did not operate as new; it did not operate at all until the Plaintiff hired third-party contractors to fix them. It also was not an out of the box solution, as it required the Plaintiff to make multiple modifications to the laboratory testing instruments to make it work specifically for the Cannabis testing industry. Lastly, the laboratory testing instruments was not reliable nor sturdy.

**COUNT THREE**
**California Commercial Code – Breach of Implied Warranty**

76. Plaintiff incorporates Paragraphs 1-62 by reference as though fully set forth herein.

77. In the alternative, Plaintiff pleads a breach of implied warranty claim against Defendant.

78. Implied warranty of fitness for particular purpose exists when, at time of contracting, the seller has reason to know (1) any particular purpose for which goods are required,  (2) that the buyer is relying on the seller's skill or judgment to select or

furnish suitable goods for such purpose, and (3) that the warranty is breached if the seller's product is not, in fact, suitable for the use intended by the buyer.

79.   Defendant knew that the Plaintiff's particular purpose in ordering the laboratory testing instruments was to provide testing services for Cannabinoids and Cannabinoid-related materials in California.

80.   As a buyer, Plaintiff relied on Defendant's judgment to select and/or furnish suitable laboratory testing instruments for such purpose.

81.   Yet, Defendant breached the warranty when its product was not suitable for the intended testing services.

## COUNT FOUR
## Unjust Enrichment

82.   Plaintiff incorporates Paragraphs 1-62 by reference as though fully set forth herein.

83.   In the alternative, Plaintiff pleads an unjust enrichment claim against Defendant.

84.   By retaining the purchase price and money spent by Plaintiff while failing to provide the requisite products in return, Defendant received a benefit at the expense of Plaintiff.

85.   Thus, Defendants have unjustly enriched themselves.

## COUNT FIVE
## Negligence in Transporting the Goods

86.   Plaintiff incorporates Paragraphs 1-62 by reference as though fully set forth herein.

87.   In the alternative, Plaintiff pleads a claim of negligence in transporting the goods.

88.   Under California law, the elements of a negligence claim are duty, breach, causation, and injury.

89.    Defendant was negligent by failing to take the proper care in their shipping of laboratory testing instruments to VRX Labs.

90.    Defendant owed Plaintiff a duty to ensure both that the shipment procedures would ensure the delivery of laboratory testing instruments in proper condition and that the products were, in fact, delivered in proper condition.

91.    However, by shipping the fragile glass products by rail, Defendant's actions ensured that the laboratory testing instruments would not be delivered in proper condition.

92.    Accordingly, Defendant's negligent action of failing to abide by reasonable shipping procedures caused Plaintiff to suffer damages in the form of damaged, unusable goods.

## COUNT SIX

### Negligence in Servicing Installation of the Laboratory Testing Instruments

93.    Plaintiff incorporates Paragraphs 1-62 by reference as though fully set forth herein.

94.    In the alternative, Plaintiff pleads a claim of negligence in servicing and installing the laboratory testing instruments against Defendant.

95.    Under California law, the elements of a negligence claim are duty, breach, causation, and injury.

96.    Defendant undertook a duty to service and install the laboratory testing instruments purchased by Plaintiff.

97.    Defendant breached that duty when they failed to provide local technicians who were capable and willing to come onsite to the VRX Labs business in Long Beach, California, and calibrate the laboratory testing instruments, help set it up, and provide ongoing maintenance.

98.    That failure caused an injury to Plaintiff because VRX Labs was forced to find a third-party contractor to perform the servicing of the laboratory testing

instruments and, consequently, incur additional expenses.

## COUNT SEVEN
### Negligent Hiring and Supervision

99.    Plaintiff incorporates Paragraphs 1-62 by reference as though fully set forth herein.

100.    In the alternative, Plaintiff pleads a claim of negligent hiring and supervision against Defendant.

101.    To establish the elements of a negligence hiring and supervision, a plaintiff must show: (1) a general duty on the employer to use reasonable care in the training and/or supervision of employees to ensure that they are fit for their positions; (2) breach; (3) injury; and (4) causation.

102.    Defendant had a duty to provide adequate technical support to install and calibrate the laboratory testing instruments delivered to Plaintiff in Long Beach, California.

103.    As an employer, Defendant failed to train and/or supervise its employees and local technicians and ensure that they are fit to install and calibrate the laboratory testing instruments.

104.    Defendant's negligence resulted in more damage to the laboratory testing instruments, lost time, and additional expenses incurred by hiring third-party contractors to perform the work that was promised by the Defendant's technicians.

105.    It caused injury to the Plaintiff.

## COUNT EIGHT
### Negligent Misrepresentation

106.    Plaintiff incorporates Paragraphs 1-62 by reference as though fully set forth herein.

107.    In the alternative, Plaintiff pleads a claim of negligent misrepresentation against Defendant.

108.  In California, the elements of a negligent misrepresentation are as follows: (1) a misrepresentation of a past or existing material fact; (2) without reasonable grounds for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance thereon by the party to whom the misrepresentation was directed; and (5) damages.

109.  Defendant misrepresented that the laboratory testing instruments would be delivered in working condition, that the instruments would be suitable for Cannabis testing, and that the instruments would provide adequate technical support to install and calibrate the laboratory testing instruments.

110.  Defendant did not have reasonable grounds to believe any of these statements were true.

111.  Defendant intended to induce Plaintiff to rely on these misrepresentations.

112.  Plaintiff justifiably relied on these statements and incurred damages as a result.

## COUNT NINE
### Fraud

113.  Plaintiff incorporates Paragraphs 1-62 by reference as though fully set forth herein.

114.  In the alternative, Plaintiff pleads fraud against Defendant.

115.  To plead a fraud claim, a party must allege the following: (1) a knowingly false representation or fraudulent omission by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages.

116.  GenTech's website, along with Mr. Piccirillo, Defendant GenTech's sales representative, made representations to VRX Labs that were material and false. When GenTech's website and Mr. Piccirillo made the representations to VRX Labs, they either knew that the representations were false or made the representations with fraudulent omissions.

117.   More specifically, in the beginning of March of 2018, Plaintiff discovered Defendant's website and reviewed multiple representations on the available products, shipment, installation, and servicing. Additionally, on or about March 13, 2018, Mr. Piccirillo made misrepresentations that the laboratory testing instruments were an out of the box solution, that the instruments were specially modified for the Cannabis testing industry that was new at that time, and that the laboratory testing instruments were reliable and sturdy, and were ideal for Cannabis industry, new at that time, and provide installation and four-day training to the lab technicians. Additionally, other promises made by GenTech include adequate technical support and warranty for the laboratory testing instruments. GenTech verified to VRX Labs that it had local technicians who were capable and willing to come onsite at VRX Labs and calibrate the laboratory testing instruments, help set them up, and provide ongoing maintenance, as well as four-day training to verify that lab technicians properly operate the laboratory testing instruments.

118.   All the above statements were intended to induce reliance by Plaintiff VRX Labs and secure Purchase Orders for over $674,481.94.

119.   Plaintiff VRX Labs justifiably relied on the Mr. Piccirillo's statement, and the representations published on GenTech's website.

120.   As a proximate result of such fraud, VRX Labs sustained damages in excess of $75,000, which VRX Labs seeks to recover in this suit.

## COUNT TEN
### Continuing Fraud - False Promise – Cal. Civ. Code §§ 1572 and 1710

121.   Plaintiff incorporates Paragraphs 1-62 by reference as though fully set forth herein.

122.   In the alternative, Plaintiff pleads false promise against Defendant.

123.   One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damages which he thereby suffers.

California Civil Code § 1710 further specifies the scope of deceit, one being False Promise, which is a "promise made without any intention of performing it."

124.   Defendant GenTech continued to deceive and make false promises to VRX Labs.

125.   After the first batch of the laboratory testing instruments was delivered to Long Beach in Spring of 2018, representatives of Defendant GenTech communicated to VRX Labs that Defendant had qualified workers in Long Beach who were properly trained and qualified to calibrate the laboratory testing instruments.

126.   However, the workers who came to the VRX Labs site in Long Beach were untrained, unqualified, unable to identify the problem with the laboratory testing instruments. Because GenTech workers did not fix the problems with the laboratory testing instruments, VRX Labs had to employ workers from other companies, for an extra fee, to calibrate and fix the laboratory testing instruments.

127.   Even after the breach of contract and fraudulent misrepresentations, GenTech continued to make false and deceitful statements to VRX Labs, despite knowing it could not fulfill its promises.

128.   VRX Labs relied on the statements made in the Spring and Summer of 2018, and that reliance put it in a position for further injury and risk.

129.   As a direct result of Defendant GenTech's actions described above, VRX Labs suffered damages, including payroll for lab technicians and lost profits, as well as a loss of the money that it paid to GenTech.

## COUNT ELEVEN
### Constructive Trust – Cal. Civ. Code §§ 2223, 2224

130.   Plaintiff incorporates Paragraphs 1-62 by reference as though fully set forth herein.

131.   In the alternative, Plaintiff pleads constructive trust against Defendant.

132.   A constructive trust is created where a defendant takes property by fraud, accident, mistake, undue influence, or other wrongful act. Cal. Civ. Code §§ 2223, 2224. A constructive trust is a remedial device primarily created to prevent unjust enrichment.

133.   GenTech is in possession of VRX Lab's money, which was acquired by fraudulent promises that GenTech would deliver working laboratory testing instruments to VRX Labs.

134.   If GenTech does not refund VRX Labs for the misfunctioning and undelivered laboratory testing instruments, GenTech will be unjustly enriched.

135.   VRX Labs seeks a constructive trust to be imposed on GenTech and all its known and unknown businesses and entities, including Defendants John Doe I and John Doe II, in the interest of seeking justice and avoiding the unjust enrichment of GenTech.

## VI.    NOTICE AND CONDITIONS PRECEDENT

136.   All conditions precedent to maintaining these causes of action have been performed or have otherwise occurred. In the alternative, conditions precedent are excused because requiring its performance may cause extreme forfeiture or penalty.

## VII.   DAMAGES

137.   As a direct result of Defendant GenTech actions as described above, VRX Labs has and continues to suffer injuries and damages including actual damages, loss of business revenue and loss of profit in an amount greater than $75,000, and loss of the money it paid to GenTech.

## VIII. ATTORNEYS' FEES

138.   Plaintiff seeks recovery of all necessary attorneys' fees in connection with the preparation and trial of this cause, and for any appeal of a judgment entered by the Court, or as otherwise allowed by law.

## IX.    JURY DEMAND

139.   Plaintiff respectfully demands the right to have a trial by jury and has tendered the appropriate jury fee to the Clerk of Court for the U.S. District Court for the Central District, Southern Division.

## X.    PRAYER

140.   **WHEREFORE,** Plaintiff VRX Labs prays that Defendant GenTech be cited to appear and answer, and after trial and hearing, Plaintiff be granted the relief requested as requested below:

      a. Actual, consequential, punitive, and exemplary damages, as allowed by law;

      b. Pre-judgment and post-judgment interest, as allowed by law;

      c. Reasonable and necessary attorney's fees and costs of court;

      d. Such other and further relief to which Plaintiff may show themselves just entitled at law or in equity.

Respectfully submitted,
VETHAN LAW FIRM, P.C.

By: /s/ *Charles Vethan*

Charles M.R. Vethan
California Bar No. 300098
Email: cvethan@vethanlaw.com
7755 Center Ave. 11th Floor
Huntington Beach, CA 92644
Telephone: (713) 526-2222
Facsimile: (713) 526-2230
Service email: edocs@vwtexlaw.com

***Attorney for Plaintiff***